# NO. 14-1363-CV

## In The United States Court Of Appeals
## For The Second Circuit

LOUANN GIAMBATTISTA,

PLAINTIFF-APPELLANT,

V.

AMERICAN AIRLINES INCORPORATED,

DEFENDANT-APPELLEE.

APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK, NO. 13-CV-3608
THE HONORABLE ARTHUR D. SPATT PRESIDING

### BRIEF OF APPELLEE
### AMERICAN AIRLINES INCORPORATED

Michelle Seldin Silverman
Ashley Hale
MORGAN, LEWIS & BOCKIUS LLP
502 Carnegie Center
Princeton, New Jersey  08540
609.919.6600

ATTORNEYS FOR DEFENDANT-
APPELLEE  AMERICAN AIRLINES
INCORPORATED

## <u>CORPORATE DISCLOSURE STATEMENT</u>

Pursuant to Federal Rule of Appellate Procedure 26.1, Defendant-Appellee American Airlines Incorporated, states that it is a wholly-owned subsidiary of AMR Corporation, a publicly-held corporation.

# TABLE OF CONTENTS

**Page**

Corporate Disclosure Statement ...................................................................i

I.  JURISDICTIONAL STATEMENT.......................................................1

II. STATEMENT OF THE ISSUES...........................................................1

III. STATEMENT OF THE CASE ............................................................2

IV. STATEMENT OF ALLEGED FACTS .................................................5

V.  SUMMARY OF THE ARGUMENT....................................................7

VI. ARGUMENT .....................................................................................9

    A.  Standard Of Review ...................................................................9

    B.  The District Court Properly Dismissed Plaintiff's Claim
        For Discrimination On The Basis Of A Perceived
        Disability...............................................................................12

        1.  Plaintiff has not pled that American perceived her
            to be mentally impaired ................................................12

        2.  Plaintiff did not plead any adverse employment
            action at the hands of American ...................................14

            a.  ICE's decision to follow up on the reports
                does not constitute an adverse employment
                action by American .............................................15

            b.  Plaintiff's voluntary decision to decline
                scheduled shifts to avoid further questioning
                by ICE does not constitute an adverse
                employment action by American ........................17

            c.  The alleged denial of Plaintiff's transfer
                request is not an adverse employment
                action, and in any case, such claim is
                preempted ..........................................................18

    C.  The District Court Properly Dismissed Plaintiff's Claim
        for  Harassment on the Basis of A Perceived Disability. ........22

VII. CONCLUSION ..............................................................................27

ii

# TABLE OF AUTHORITIES

**Page(s)**

*Andrews v. Louisville & Nashville R.R.*,
　406 U.S. 320 (1972)..................................................................................19

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009)..............................................................................7, 10

*Audette v. Int'l Longshoremen's and Warehousemen's Union*,
　195 F.3d 1107 (9th Cir. 1999) ................................................................19

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007)............................................................................10, 11

*Brown v. Daikin Am. Inc.*,
　No. 12-2995, 2014 WL 2895974 (2d Cir. June 27, 2014)....................9, 10, 11

*Cancel de Rugg v. West*,
　106 F. Supp. 2d 289 (D.P.R. 2000) ........................................................17

*Coulter v. Morgan Stanley & Co. Inc.*,
　753 F.3d 361 (2d Cir. 2014) ...................................................................11

*Farina v. Branford Bd. of Educ.*,
　458 F. App'x 13 (2d Cir. 2011) ..............................................................23

*Forgione v. City of New York*,
　No. 11-5248, 2012 WL 4049832 (E.D.N.Y. Sept. 13, 2012)............23, 25

*Fornah v. Cargo Airport Servs., LLC*,
　No. 12-3638, 2014 WL 25570 (E.D.N.Y. Jan. 2, 2014)........................26

*Forrest v. Jewish Guild for the Blind*,
　3 N.Y.3d 295 (2004)...............................................................................22

*Gagliardi v. Village of Pawling*,
　18 F.3d 188 (2d Cir. 1994) ...............................................................10, 11

*Gaidasz v. Genesee Valley Bd. of Co-op. Educ. Sys.*,
　791 F. Supp. 2d 332 (W.D.N.Y. 2011)...................................................20

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Giraud v. Bd. of Educ.*,
   No. 12-1842, 2013 WL 3776242 (S.D.N.Y. July 17, 2013) .............................10

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1993)...............................................................................................22

*Hedges v. Town of Madison*,
   456 F. App'x 22 (2d Cir. 2012)..........................................................................10

*Khalil v. State*,
   847 N.Y.S.2d 390 (N.Y. Sup. Ct. 2007)............................................................22

*Laurent v. G & G Bus Serv., Inc.*,
   No. 10-4055, 2011 WL 2683201 (S.D.N.Y. May 17, 2011)..............................12

*Lederman v. N.Y. City Dep't of Parks & Rec.*,
   731 F.3d 199 (2d Cir. 2013) ...............................................................................19

*Legnani v. Alitalia Linee Aeree Italiane*,
   No. 95-0202, 1997 WL 642556 (S.D.N.Y. Oct. 16, 1997) ...............................25

*Maybank v. McHugh*,
   No. 11-508, 2012 WL 2317652 (W.D. Tex. June 18, 2012)..............................17

*Monroe v. Missouri Pacific R.R. Co.*,
   115 F.3d 514 (7th Cir. 1997) ..............................................................................19

*Montgomery v. Am. Airlines, Inc.*,
   626 F.3d 382 (7th Cir. 2010) ..............................................................................26

*Pahuja v. Am. Univ. of Antigua*,
   No. 11 Civ. 4607 (PAE) 2012 WL 6592116 (S.D.N.Y. Dec. 18, 2012)............10

*Payano v. Fordham Tremont CMHC*,
   287 F. Supp. 2d 470 (S.D.N.Y. 2003) ................................................................24

*Risco v. McHugh*,
   868 F. Supp. 2d 75 (S.D.N.Y. 2012) ...........................................................12, 13

## TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Roney v. Ill. Dep't of Transp.*,
474 F. 3d 455 (7th Cir. 2007) ...............................................................16

*Rosario v. City of New York*,
No. 11-9008, 2013 WL 782408 (S.D.N.Y. Jan. 9, 2013)...................22

*Rozenfeld v. Dep't of Design & Constr. of City of New York*,
875 F. Supp. 2d 189 (E.D.N.Y. 2012) ................................................16

*Ruston v. Town Bd. for Town of Skaneateles*,
610 F.3d 55 (2d Cir. 2010) .................................................................11

*Samuels v. New York State Dep't of Correctional Services*,
No. 94-8645, 1997 WL 253209 (S.D.N.Y. May 14, 1997)................27

*Sanders v. New York City Human Res. Admin.*,
361 F.3d 749 (2d Cir. 2004) .........................................................14, 15

*Schamann v. O'Keefe*,
314 F. Supp. 2d 515 (D. Md. 2004).....................................................16

*Scoppettone v. Mamma Lombardi's Pizzico, Inc.*,
523 F. App'x 73 (2d Cir. 2013) .....................................................25, 26

*Shine v. City of New York*,
No. 12-8393, 2013 WL 5231472 (S.D.N.Y. July 24, 2013) ..............20

*Shumway v. United Parcel Serv., Inc.*,
118 F.3d 60 (2nd Cir. 1997) ...............................................................21

*Tand v. Solomon Schechter Day School of Nassau County*,
324 F. Supp. 2d 379 (E.D.N.Y. 2004) ................................................19

*Tepperwien v. Entergy Nuclear Operations, Inc.*,
663 F.3d 556 (2d Cir. 2011) ...............................................................16

*Terry v. Ashcroft*,
336 F.3d 128 (2d Cir. 2003) ...............................................................17

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Tse v. New York Univ.*,
  No. 10-07207, 2013 U.S. Dist. LEXIS 134223 (S.D.N.Y. Sept. 19, 2013) ....... 22

*Vance v. Ball State Univ.*,
  133 S. Ct. 2434 (2013) ................................................................ 25, 26

*Vance v. Ball State University*,
  646 F.3d 461 (7th Cir. 2011), *aff'd* 133 S.Ct. 2434 (2013) ............................... 26

*Wagner v. County of Nassau*,
  2014 U.S. Dist. LEXIS 94685 (E.D.N.Y. July 11, 2014) ................................. 13

*Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*,
  973 F. Supp. 2d 385 (S.D.N.Y. 2013) ................................................ 22

**STATUTES**

28 U.S.C. § 1291 ............................................................................. 1

28 U.S.C. § 1331 ............................................................................. 1

28 U.S.C. § 1367(a) .......................................................................... 1

42 U.S.C. § 12111 *et seq.* ("ADA") ....................................................... 1

45 U.S.C. §§ 151-88 ....................................................................... 19

**OTHER AUTHORITIES**

Fed. R. App. P. 28(a)(9)(A) ............................................................... 19

Fed. R. App. P. 32(a)(7)(B)(iii) ............................................................ 29

Fed. R. App. P. 32(a)(7)(C)(i) ............................................................. 29

Fed. R. Civ. P. 12(b)(6) ................................................................. 9, 17

Fed. R. Civ. P. 32(a)(7)(B) ................................................................ 29

# I.   JURISDICTIONAL STATEMENT

The District Court had jurisdiction over Plaintiff-Appellant Louann Giambattista's ("Plaintiff") claims under the federal Americans with Disabilities Act, 42 U.S.C. § 12111 *et seq.* ("ADA") pursuant to 28 U.S.C. § 1331.   The District Court had supplemental jurisdiction over Plaintiff's claims under the New York State Human Rights Law, N.Y. Exec. Law § 296 ("NYSHRL") pursuant to 28 U.S.C. § 1367(a) because Plaintiff's NYSHRL disability discrimination claims were so related to her federal ADA claim that they formed part of the same case or controversy.

This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

# II.   STATEMENT OF THE ISSUES

1.     Whether the District Court properly granted Defendant-Appellee American Airlines, Inc.'s ("American", the "Company" or "Defendant") motion to dismiss Plaintiff's claims for discrimination and harassment on the basis of a perceived disability where the Amended Complaint:

   A.   Fails to allege facts sufficient to plausibly suggest that American perceived her to have a physical or mental impairment;

   B.   Fails to allege facts sufficient to plausibly suggest that she was subject to an adverse employment action at the hands of American.

2.     Whether the District Court properly granted American's motion to dismiss Plaintiff's hostile work environment claim where the Amended Complaint fails to allege sufficient facts to suggest that she had been subject to actionable harassment on the basis of a perceived disability for which liability could be attributed to American.

### III.   STATEMENT OF THE CASE

Plaintiff has been employed as a flight attendant with American since 1979. In the action below, Plaintiff alleges that in February 2012, two of her fellow flight attendants reported to the United States Immigration and Customs Enforcement ("ICE") and to American that they believed Plaintiff had illegally carried a rat (which she admittedly keeps as pets) with her onto an international flight.  *See* A-59 at ¶ 2, A-63 at ¶ 11.  Plaintiff concedes that such conduct would be illegal, and as such, it should be no surprise that both ICE and American followed up on the reports and questioned Plaintiff about whether she had, in fact, carried her pet rats with her aboard international flights.  *See* A-59 at ¶ 1, A-60 at ¶ 3.  No rats were found and Plaintiff continued working.  *See* A-60 at ¶ 3.  In fact, Plaintiff remains employed by American.  *See* A-63 at ¶11.

Nonetheless, on June 26, 2013, Plaintiff filed the action below against American, the gravamen of which is that she should not have been questioned by ICE, and that American should have taken action to prevent the questioning by the

2

United States government.  *See* A-32 – A-54.  Plaintiff's Amended Complaint claims: (1) discrimination on the basis of a perceived disability in violation of both the ADA and the NYSHRL; and (2) harassment on the basis of a perceived disability in violation of both the ADA and the NYSHRL.  *See* A-58 – A-76.

On November 12, 2013 Defendant moved to dismiss Plaintiff's original Complaint, on the grounds that Plaintiff failed to state a claim for relief pursuant to either cause of action.  *See* A-7 – A-26.  Most critically, Plaintiff failed to plead facts sufficient to plausibly suggest that American perceived her to have a physical or mental impairment.  *Id.*  Indeed, the only perceived disability alleged in the Complaint was Plaintiff's purported inability "to be away from her pet rats for any period of time."  *See* A-39 at ¶ 13.  American also demonstrated that Plaintiff's Complaint failed to plead that she had suffered any adverse employment action at the hands of American.  *See* A-7 – A-26.

Finally, American demonstrated that Plaintiff had failed to plead a claim for a hostile work environment on the basis of a perceived disability – indeed, the only allegations of harassment in the Complaint were purported rumors among her co-workers that she had been "caught" carrying a rat, and that on one occasion, a gate agent had followed her through the airport.  *See* A-40 at ¶ 17.  The Complaint did not connect these alleged incidents to any perception that Plaintiff was mentally impaired, nor did the handful of alleged incidents rise to level of a severe and

pervasive harassment. Furthermore, the Complaint suggested no basis to impute liability for these alleged actions to American. *See* A-7 – A-26.

On January 20, 2014, in response to Defendant's motion to dismiss, Plaintiff cross-moved for leave to amend her Complaint, proposing to add just a handful of factual allegations to her pleading. *See* A-27 – A-76.

On February 10, 2014 Defendant filed its reply in support of the motion to dismiss, and its opposition to Plaintiff's motion for leave to amend the Complaint, as even with the newly added allegations, the proposed Amended Complaint failed to state a plausible claim for discrimination or harassment on the basis of a perceived disability.

By Order dated March 20, 2014, the District Court, Honorable Arthur D. Spatt, granted Plaintiff's motion to amend her Complaint. *See* A-110 – A-125. He then applied Defendant's motion to dismiss to the newly Amended Complaint, and granted American's motion. *See* A-116. The District Court correctly found that the Amended Complaint did not allege facts sufficient to plausibly suggest that Plaintiff had suffered an adverse employment action at the hands of American. *See* A-118. The District Court did not reach the issue of whether Plaintiff had sufficiently pled a cognizable perceived disability. *Id.*

The District Court also dismissed Plaintiff's hostile work environment claim, correctly concluding that Plaintiff failed to plead that she had been subject

4

to severe or pervasive actionable harassment.  *See* A-124.  The District Court correctly held that Plaintiff's allegations that she had been called "crazy" by her co-workers, and that her supervisor had once patted her down to determine whether she was concealing a rat beneath her clothing were "isolated, minor acts" insufficient to state a claim for actionable harassment.  *See* A-123 – A-124.  Further, the District Court also properly concluded that Plaintiff had failed to allege facts sufficient to impute any potential liability to American.  *See* A-124.

This appeal followed.

## IV.    STATEMENT OF ALLEGED FACTS

Plaintiff currently works for American as a flight attendant.  *See* A-63 at ¶ 11.  She is a member of the Association of Professional Flight Attendants ("APFA" or the "Union"), and her employment with American is governed by the Collective Bargaining Agreement ("CBA") between APFA and American.  *See* A-67 at ¶ 23, A-74 at ¶ 42.

In the Amended Complaint, Plaintiff alleges that in February 2012, two of her flight attendant co-workers reported to ICE and American that they believed Plaintiff had illegally brought her pet rat onboard an international flight.  *See* A-59 at ¶ 2, A-63 at ¶ 12, A-69 at ¶¶ 29-30.  Plaintiff alleges that her co-workers allegedly made these reports because they "were under the false perception, and

falsely alleged, that Ms. Giambattista had a mental disability in which she was unable to be away from her pet rats for any period of time." *See* A-64 at ¶ 13.

According to the Amended Complaint, ICE and American followed up on the reports about Plaintiff. *See* A-64 at ¶¶ 13, 15. Plaintiff alleges she was detained and questioned by ICE four times in February and March 2012, and that American personnel were present on one of those occasions. *See* A-60 at ¶ 3, A-64 – A-65 at ¶¶ 15-17, A-68 at ¶ 27.

The Amended Complaint also claims that, in the aftermath of the reports, an American pilot patted her down to determine whether she was carrying a rat concealed in her clothing. *See* A-69 at ¶ 29. Furthermore, she alleges that she was harassed by co-workers because of "rumors" that she had been "caught" bringing a rat onto an international flight. *See* A-60 at ¶ 4, A-68 at ¶ 26. She also claims that her co-workers called her "crazy," said that she would need to be "take[n] away in white coats," and expressed surprise that she was married. *See* A-68 at ¶ 26, A-71 at ¶ 36, and A-72 at ¶ 37.

Plaintiff further alleges that she spoke to Human Resources about the alleged comments by her co-workers and was told that, after an "extensive" investigation, American had concluded that her claims were "unsubstantiated." *See* A-71 at ¶¶ 35-36. Nonetheless, Plaintiff alleges that the investigation into her complaints was inadequate. *See* A-72 at ¶ 38.

Finally, Plaintiff alleges that she suffered an adverse employment action when the Company denied her request to transfer from international operations to domestic.  *See* A-60 at ¶ 4, A-73 at ¶ 41.  Yet, Plaintiff admits that assignment changes are unequivocally governed by the CBA between Plaintiff's Union and American.  *Id.*  Plaintiff alleges she asked her Union to submit a formal grievance on her behalf, but the Union denied the request.  *See* A-73 at ¶ 41.

## V.    SUMMARY OF THE ARGUMENT

The District Court correctly dismissed Plaintiff's Amended Complaint because Plaintiff failed to state a claim for employment discrimination or harassment on the basis of a perceived disability under either the ADA or the NYSHRL.  As the District Court explained, the allegations in the Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *See* A-116, citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Plaintiff has failed to meet this standard, as she has not asserted factual allegations which would allow the Court "to infer that a clam is plausible."  *See* A-117.

The essence of Plaintiff's claim is that after co-workers reported that she traveled with her pet rat on an international flight, she should not have been questioned by ICE about this potentially illegal conduct.  Plaintiff's attempt to convert her annoyance with ICE's questioning into an actionable claim against

7

American fails, however, because she has failed to allege any cognizable perceived disability and has failed to allege facts to that she suffered any actionable harm for which American can possibly be held liable.

As the District Court correctly concluded, Plaintiff has not pled facts sufficient to plausibly suggest that American perceived her to have a physical or mental *impairment*. Instead, the Amended Complaint alleges only that Plaintiff's co-workers perceived her to be "unable to be away from her pet rats for any period of time," which is not a legally cognizable impairment. *See* A-64 at ¶ 13. Further, even if her co-workers did believe she suffered from a mental impairment, there is absolutely nothing in the Amended Complaint to suggest that American held the same belief.

Further, the District Court properly determined that Plaintiff failed to allege that she was subject to an actionable adverse employment action, since she merely alleged that: (1) that ICE followed up on reports of illegal conduct; (2) she *voluntarily* declined scheduled shifts to avoid questioning by ICE; and (3) her request for a transfer (governed by the CBA and therefore preempted by the Railway Labor Act anyway) was denied. Certainly, questioning by the federal government cannot constitute an adverse employment action by American. Further, Plaintiff has not alleged any facts to support an argument that American

"intentionally create[d] a work atmosphere so intolerable" that she was *forced* to voluntarily decline scheduled shifts.

Finally, the District Court correctly found that Plaintiff failed to state a claim for harassment on the basis of a perceived disability because she did not allege facts demonstrating severe or pervasive harassment sufficient to alter the terms and conditions of her employment. Specifically, the District Court properly determined that Plaintiff's complaints about "isolated, minor acts" by her co-workers referring to her as "crazy" in the colloquial sense did "not warrant relief under a hostile environment theory." *See* A-124. Further, the Amended Complaint does not provide any factual basis to impute the purported "harassment" to American.

Accordingly, as detailed below, this Court should affirm the order of the District Court below granting American's motion to dismiss.

## VI.   ARGUMENT

### A.   <u>Standard Of Review.</u>

This Court reviews a district court's order granting a motion to dismiss pursuant to Rule 12(b)(6) under a *de novo* standard. *Brown v. Daikin Am. Inc.*, No. 12-2995, 2014 WL 2895974, at *3 (2d Cir. June 27, 2014). In doing so, this Court should affirm the District Court's decision granting dismissal if the complaint does not plead "'enough facts to state a claim to relief that is plausible on its face.'" *Id.*

(citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim *only* has facial plausibility "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* (*citing Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice, and we are not bound to accept as true a legal conclusion couched as a factual allegation." *Id.* (internal citations removed).

Plaintiff's brief sets forth a "Standard of Review" that is obsolete, predicated upon on jurisprudence that pre-dates *Twombly* and *Iqbal* and their progeny in this Circuit.  As this Court has explained "employment discrimination claims must meet the standard of pleading set forth in *Twombly* and *Iqbal*, even if pleading a prima facie case is not required." *Hedges v. Town of Madison*, 456 F. App'x 22, 23 (2d Cir. 2012) (summary order).  Even if pleading a prima facie case is not required, "the elements of a prima facie case do 'provide an outline of what is necessary to render [a plaintiff's employment discrimination or retaliation] claims for relief plausible.'" *Giraud v. Bd. of Educ.*, No. 12-1842, 2013 WL 3776242 (S.D.N.Y. July 17, 2013); *quoting Pahuja v. Am. Univ. of Antigua*, No. 11 Civ. 4607 (PAE) 2012 WL 6592116, at *9 (S.D.N.Y. Dec. 18, 2012).

Relying upon this Court's 1994 decision in *Gagliardi v. Village of Pawling*, 18 F.3d 188, 191 (2d Cir. 1994), Plaintiff incorrectly argues that courts

are "only" to dismiss a complaint if "it *appears* beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* *See* Plaintiff's Brief at 4 (emphasis added). But, this standard has been long superseded. It is now crystal clear that "[a] complaint ***must*** be dismissed if it does not plead 'enough facts to state a claim to relief that is plausible on its face'" – meaning, the facts must be sufficient to support a plausible inference of liability. *Brown*, 2014 WL 2895974, at *3 (emphasis added) (*citing Twombly*). In making this determination, courts are not to blindly "amplify" the facts alleged in the complaint, as Plaintiff's brief suggests. *See* Plaintiff's Brief at 3. Rather, the determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 58-59 (2d Cir. 2010). Following these instructions, the District Court below properly concluded that, in the instant case, Plaintiff had not sufficiently pled a claim for relief and dismissed her Complaint.

This Court should affirm that decision, and may do so on any basis supported by the record. *Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 366 (2d Cir. 2014) ("We review the district court's grant of a motion to dismiss *de novo,* but may affirm on any basis supported by the record.").

**B.    The District Court Properly Dismissed Plaintiff's Claim For Discrimination On The Basis Of A Perceived Disability.**

> **1.    Plaintiff has not pled that American perceived her to be mentally impaired.**

Plaintiff concedes that, to survive a motion to dismiss, she must plead facts sufficient to plausibly suggest that American perceived her to have a physical or mental *impairment*.  *See* Plaintiff's Brief at 22; *see also Laurent v. G & G Bus Serv., Inc.*, No. 10-4055, 2011 WL 2683201, at *5–6 (S.D.N.Y. May 17, 2011) (Under the ADA and the NYSHRL, a plaintiff alleging discrimination on the basis of a perceived disability must allege facts to suggest her employer perceived her to have a physical or mental *impairment* that led to an adverse employment action); *Risco v. McHugh*, 868 F. Supp. 2d 75, 108 (S.D.N.Y. 2012) (A Plaintiff must allege facts sufficient to show an "adverse employment action because of a perceived mental impairment that is not both transitory and minor.").

The Amended Complaint does not meet this burden, alleging only that Plaintiff's co-workers perceived her to be "unable to be away from her pet rats for any period of time."  *See* A-64 at ¶ 13.    This is *not* a *legally cognizable impairment*.  As the Southern District of New York held in *Risco,* "[e]ven under the expanded definition of disability set forth in the ADA Amendments Act of 2008…," the colloquial use of words like "erratic," or "mental" to describe a plaintiff are insufficient to show a perceived mental impairment within the

meaning of the law.    868 F. Supp. 2d at 108-09 (allegation that plaintiff's employer "referred to her inability to do a task as a 'mental thing' and described her inappropriate behavior as 'erratic,' do not demonstrate" that employer perceived the plaintiff "as having a mental impairment" within the meaning of the law).  At most, the allegations in the Amended Complaint suggest that certain of Plaintiff's co-workers considered her attachment to her pet rats unusual, and that – on a handful of occasions – made stray quips about her being "crazy."  *See e.g.*, A-58 – A-59 at ¶¶ 1-2, A-72 at ¶ 37.  This is insufficient, under either the ADA or the NYSHRL, to show that Plaintiff's co-workers believed her to be truly *impaired* because of some purported mental disability.[1]

That said, even if the Amended Complaint did contain facts sufficient to show that Plaintiff's ***co-workers*** believed she was seriously mentally impaired, there are no facts to suggest that American shared that perception.   Instead,

---

[1]    Plaintiff's argument that the NYSHRL has "broader parameters" for what constitutes a "disability" than the ADA is misguided, as the issue at hand is whether American *regarded* Plaintiff as having a cognizable impairment. As "the inquiry under the NYSHRL as it pertains to 'regarded as' claims is the same as that under the ADA," and Plaintiff utterly failed to plead any facts that anyone regarded Plaintiff as being impaired in any way, her Amended Complaint was properly dismissed. *Wagner v. County of Nassau*, 2014 U.S. Dist. LEXIS 94685 (E.D.N.Y. July 11, 2014).  Again, at most, the allegations in Plaintiff's Amended Complaint suggest that certain of her co-workers made stray comments about her attachment to her pets because they thought that such conduct was odd – not because they thought she had a mental impairment.

13

Plaintiff's Amended Complaint makes a baseless leap of logic, alleging that American "apparently" shared her co-workers' perception of "a mental disability" because the Company cooperated with ICE's investigation into reports that Plaintiff had carried a live animal aboard an international flight. *See* A-64 at ¶ 13. This is insufficient to plausibly suggest that American believed Plaintiff suffers from a mental impairment. And, in reality, the allegations in the Amended Complaint suggest the exact opposite: that American chose to cooperate with ICE's investigation not because of it believed Plaintiff was mentally impaired, but because the Company felt it was required to take action in response to the report that Plaintiff had illegally transported live animals aboard its aircraft. *See* A-60 at ¶ 3.

### 2. Plaintiff did not plead any adverse employment action at the hands of American.

In this Circuit, an adverse employment action is defined as a "materially adverse change" in the terms and conditions of employment. *See Sanders v. New York City Human Res. Admin.*, 361 F.3d 749, 755 (2d Cir. 2004). To be materially adverse, a change in working conditions must be "more disruptive than a mere inconvenience or an alteration of job responsibilities." *Id.* "Examples of such a change include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices ... unique to a particular

14

situation." *Id.* (internal citations omitted). Plaintiff has not alleged that she suffered any such change. She was neither terminated nor demoted by American, nor were her responsibilities diminished in any way. Instead, the thrust of Plaintiff's Amended Complaint is that she suffered an adverse employment action because she was questioned by ICE four times, and during one such incident, American personnel were present.

> a. **ICE's decision to follow up on the reports does not constitute an adverse employment action *by American*.**

As a matter of law, ICE's decision to investigate and question Plaintiff does not show an adverse employment action *at the hands of American*. As the District Court properly held: "there is no allegation that the Defendant had any control over ICE's decision to follow up on reports that the Plaintiff had carried a live animal onto an international flight. Thus, the questioning by ICE cannot constitute an 'adverse employment action' by the Defendant." *See* A-119.

Plaintiff appeals that holding, arguing that American did in fact cause a "materially adverse change" in her work environment because — on one occasion — two ICE agents were allegedly *accompanied* by two employees of American when they approached her in the airport. *See* Plaintiff's Brief at 25. Plaintiff also suggests that American caused a "materially adverse change" in her work environment because the original "tip" that led to ICE's investigation came from her fellow flight attendants. *See id.* But, of course, the fact that American

15

employees cooperated with ICE's investigation, and the fact that the investigation started because of a report by Plaintiff's co-workers to ICE, is insufficient to show that American inflicted any adverse employment action upon the Plaintiff.

That said, it is worth noting that even if it had been American that followed up on the reports about Plaintiff, the decision to investigate would not — on its own — constitute an adverse employment action. To the contrary, it is well settled that an employer's good faith investigation into allegations of employee misconduct cannot on its own constitute an adverse employment action. *See Tepperwien v. Entergy Nuclear Operations, Inc.*, 663 F.3d 556 (2d Cir. 2011) (holding that three fact-finding investigations into employee's conduct that could have led to disciplinary action were not materially adverse employment actions); *Rozenfeld v. Dep't of Design & Constr. of City of New York*, 875 F. Supp. 2d 189, 204 (E.D.N.Y. 2012) (finding no adverse employment action where plaintiff was instructed to appear for investigatory interview by local government disciplinary office following complaint about plaintiff's "strange and disruptive behavior while at work"); *Roney v. Ill. Dep't of Transp.*, 474 F. 3d 455, 462 (7th Cir. 2007) (finding no adverse employment action where employer provided information to state police that caused police to interview employee); *Schamann v. O'Keefe*, 314 F. Supp. 2d 515, 530 (D. Md. 2004) (government investigation into lobbyist connected to contract involving plaintiff did not constitute adverse employment

16

action); *Cancel de Rugg v. West*, 106 F. Supp. 2d 289, 298 (D.P.R. 2000) (dismissing complaint under Rule 12(b)(6) where court found government investigation into sex harassment complaint involving plaintiff was not an adverse employment action); *Maybank v. McHugh*, No. 11-508, 2012 WL 2317652, at *6 (W.D. Tex. June 18, 2012) (referral of disciplinary matter involving employee to governmental criminal investigation body did not constitute adverse employment action). As the District Court correctly found, Plaintiff has failed to plead that she suffered any adverse employment action. *See* A-118.

> b. **Plaintiff's voluntary decision to decline scheduled shifts to avoid further questioning by ICE does not constitute an adverse employment action by American.**

Plaintiff alleges that after being questioned by ICE four times, she was "constructively suspended" when she began declining scheduled work shifts so she could avoid the possibility of additional questioning. *See* Plaintiff's Brief at 26. But, once again, this is not an adverse employment action by American.

To state a claim for a constructive adverse employment action, a plaintiff must plead that his/her employer "intentionally create[d] a work atmosphere so intolerable that [the employee] is forced to quit involuntarily." *Terry v. Ashcroft,* 336 F.3d 128, 151-52 (2d Cir. 2003) (allegations of constructive discharge, "viewed as a whole, [must be] so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign."). Here, Plaintiff does

not allege – nor could she – that American intentionally created the conditions that purportedly bothered her.

In reality, as the District Court pointed out, Plaintiff does not allege *any* specific intentional conduct by American that supposedly made her work environment intolerable.  *See* A-120.  The only connection she draws between American and the questioning that she found "intolerable" is the fact that – in her opinion – the Company did not act fast enough to remove the "flag" that ICE had placed on her passport.  *See* Plaintiff's Brief at 26.  However, Plaintiff alleges no facts whatsoever to suggest that American actually placed the "flag," or that the Company had the authority to remove it, or to prevent further questioning.  And, furthermore – even if American had had this authority – nothing in the Amended Complaint suggests that American delayed helping Plaintiff because of a perception that she was disabled.  Therefore, the District Court properly concluded that Plaintiff's "constructive suspension" did not qualify as an adverse employment action.

     c.     **The alleged denial of Plaintiff's transfer request is not an adverse employment action, and in any case, such claim is preempted.**

Plaintiff argues that she suffered an adverse employment action when American refused her request to transfer from international operations to domestic. *See* Plaintiff's Brief at p. 27.  Plaintiff's Amended Complaint acknowledges that

her transfer request was unequivocally governed by the CBA between American and her Union.  *See* A-67 at ¶ 23, A-74 at ¶ 42.  As such, this claim cannot be resolved without interpretation of the applicable CBA, and therefore can only be resolved through the grievance and arbitration process established by the Railway Labor Act ("RLA"), 45 U.S.C. §§ 151-88, and is preempted.  *Andrews v. Louisville & Nashville R.R.*, 406 U.S. 320, 324 (1972); *see also Monroe v. Missouri Pacific R.R. Co.*, 115 F.3d 514, 518-19 (7th Cir. 1997) (analysis of employee's wrongful discharge claim required interpretation of CBA to determine validity of employee's arguments regarding employer's retaliatory intent and, thus, his claim was preempted by the RLA); *Audette v. Int'l Longshoremen's and Warehousemen's Union*, 195 F.3d 1107, 1113 (9th Cir. 1999) (holding that Labor Management Relations Act preempted plaintiffs' state law discrimination claim, as resolution of the claim would depend on whether defendants had produced a legitimate, non-discriminatory reason for their actions, which would in turn necessarily require interpretation of the collective bargaining agreement).[2]

---

[2]   In the District Court, Plaintiff attempted to argue that she should be excused from RLA preemption and allowed to directly pursue a claim against American because her Union "wrongfully refused" to pursue a grievance on her behalf.  Plaintiff is wrong as a matter of law.  An employee subject to a CBA may only bypass preemption and directly pursue a claim in federal court where the complaint contains allegations sufficient to show that "(1) the employer's conduct amounts to a repudiation of the contractual procedures, or (2) the grievance procedure is controlled by the union and the employee has been prevented from exhausting his contractual remedies by

Furthermore, the denial of a transfer request generally is not actionable unless a plaintiff can show that the denial caused her to suffer an actionable, material disadvantage.  *Shine v. City of New York*, No. 12-8393, 2013 WL 5231472 (S.D.N.Y. July 24, 2013) (denial of reassignment is not sufficient to plead an adverse employment action unless the complaint also pleads that the denial caused a plaintiff to suffer a material disadvantage).  Thus, in order to rise to the level of an adverse employment action, the circumstances surrounding a "transfer denial must permit a reasonable fact-finder to conclude that the sought for position is materially more advantageous than the employee's current position, by the presence of objective indicators such as prestige, modernity of available technology, job security and growth, or other benefits." *Gaidasz v. Genesee Valley Bd. of Co-op. Educ. Sys.,* 791 F. Supp. 2d 332, 338 (W.D.N.Y. 2011) (internal quotations removed).  As the District Court below properly concluded, Plaintiff did

the union's wrongful refusal to process the grievance."  *Tand v. Solomon Schechter Day School of Nassau County*, 324 F. Supp. 2d 379, 384 (E.D.N.Y. 2004).  Here, the Amended Complaint contains no plausible facts to suggest that American repudiated the contractual procedures set forth in the applicable CBA, or that Plaintiff's union "wrongfully" prevented her from exhausting her contractual remedies.  Regardless, Plaintiff has not preserved this argument for appellate review, as she does not include it in her Brief.  *Lederman v. N.Y. City Dep't of Parks & Rec.*, 731 F.3d 199, 203 (2d Cir. 2013) ("To preserve arguments for appellate review, appellants must include in their briefs their 'contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'")(citing Fed. R. App. P. 28(a)(9)(A)).

not plead "that a position for the Defendant as flight attendant on international flights was materially less prestigious, materially less suited to her skills, or materially less conducive to career advancement than a similar position on domestic flights*." See* A-122. To the contrary, the only "disadvantage" alleged by Plaintiff was the possibility of future questioning by the government. This type of "subjective" disadvantage is insufficient to show an adverse employment action at the hands of American.

Finally, even if Plaintiff's "failure to transfer" claim were not preempted, and even if Plaintiff had plead a material harm resulting from the denied transfer, the Amended Complaint contains no facts to suggest that the transfer was denied because American perceived Plaintiff to be disabled. Though the Amended Complaint contains a boilerplate allegation that American treated a similarly-situated peer more favorably than Plaintiff, notably absent are any facts to plausibly suggest that this co-worker is a valid comparator. *See Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2nd Cir. 1997) (comparator must similarly situated in all material respects). Indeed, given that transfer requests are closely regulated by the CBA, and given that Plaintiff's Amended Complaint alleges that the Union *decided not* to grieve the denial of her transfer request, the only plausible conclusion is that Plaintiff and the supposed comparator were *not* similarly situated at all.

Because Plaintiff has failed to allege any actionable adverse employment action by American, the District Court's decision to dismiss her discrimination claim should be affirmed.

**C.  The District Court Properly Dismissed Plaintiff's Claim for Harassment on the Basis of A Perceived Disability.**

To overcome a motion to dismiss on a hostile work environment claim under the ADA or the NYSHRL, a plaintiff must allege facts demonstrating severe or pervasive harassment sufficient to alter the terms and conditions of her employment. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Forrest v. Jewish Guild for the Blind*, 3 N.Y.3d 295, 310 (2004).  She must also provide a factual basis to show that such harassment was because of her perceived disability. *See Rosario v. City of New York*, No. 11-9008, 2013 WL 782408, at *6-7 (S.D.N.Y. Jan. 9, 2013) (granting motion to dismiss where plaintiff failed to allege facts sufficient to show that complained of conduct was because of his disability); *Wesley-Dickson v. Warwick Valley Cent. Sch. Dist.*, 973 F. Supp. 2d 385, 407 (S.D.N.Y. 2013) (dismissing hostile work environment claim where there was no evidence to link "unpleasant work experiences" to plaintiff's disabilities); *Tse v. New York Univ.*, No. 10-07207, 2013 U.S. Dist. LEXIS 134223, at *40-43 (S.D.N.Y. Sept. 19, 2013) (dismissing ADA and NYSHRL hostile work environment claims where statements were not made in reference to plaintiff's disability); *see also Khalil v. State*, 847 N.Y.S.2d 390, 395 (N.Y. Sup. Ct. 2007)

(to establish a hostile work environment, plaintiff must show that the incidents were sufficiently continuous and concerted to be considered pervasive and must also demonstrate that she was subjected to hostility because of her membership in a protected class).[3]    The allegations of the Amended Complaint fail to meet these requirements.

Plaintiff alleges that she was harassed based upon her perceived mental disability when, in February and March 2012, two of her co-workers at American made "at least two blatantly false report[s]" to ICE alleging that she was carrying live animals and concealing them on her person during work flights.  *See* A-59 at ¶ 2, A-63 at ¶ 12.  Second, she alleges that following these reports, some of her other peers referred to her as "crazy"— one expressing a preference not to work with her, another expressing surprise that she was married, and another making an off-hand comment that "they have to take you away in white coats." *See* A-68 at ¶ 26, A-72 at 37.    Third, Plaintiff claims that on one occasion, an American pilot

---

[3]    As the District Court pointed out, the Second Circuit has yet to rule on the issue of whether or not the ADA recognizes a hostile work environment claim. *Forgione v. City of New York,* No. 11-5248, 2012 WL 4049832, at *7 n.6 (E.D.N.Y. Sept. 13, 2012); *Farina v. Branford Bd. of Educ.,* 458 F. App'x 13, 17 (2d Cir. 2011) ("Even assuming, arguendo, that the ADA provides a basis for a hostile work environment claim [an issue this Court has not yet decided]....").  But, assuming such a claim is actionable under the ADA, the Plaintiff in this matter has failed to plead facts sufficient to support such a claim.

allegedly "groped" her to determine whether she was concealing a pet rat in her clothing.  *See* A-69 at ¶ 29.  Finally, Plaintiff alleges that in the course of assisting ICE, an American employee "stalked Ms. Giambattista by boarding the aircraft and following her through the JFK terminal, until two AA security agents and two ICE agents apprehended her."  *See* A-65 at ¶ 17.

Notably, the Amended Complaint does not connect any alleged actions by American to a supposed perception that Plaintiff has a mental impairment, as opposed the Company's belief that she might have violated the law.  With regard to Plaintiff's co-workers, the Amended Complaint suggests – at most – that after hearing that Plaintiff might have carried a rat aboard an aircraft, they believed Plaintiff's behavior was odd.  Though Plaintiff's co-workers may have use the word "crazy" in the context of their stray comments, the use of that word – which is part of everyday colloquial American discourse – cannot alone transform a petty workplace grievance into actionable discrimination.  *See Payano v. Fordham Tremont CMHC*, 287 F. Supp. 2d 470, 476 (S.D.N.Y. 2003) ("simple teasing, offhand comments, and isolated incidents" are insufficient to establish a hostile work environment claim)(citations omitted).  If it could, then every person who has ever been referred to as "crazy" or "nuts" in the idiomatic sense would be automatically transformed into a potential plaintiff under the ADA or NYSHRL. No reasonable argument can be made that this was intended by the law.

24

Furthermore, the handful of comments alleged by Plaintiff do not rise to the level of severe and pervasive harassment. *See Forgione v. City of New York*, No. 11-5248, 2012 WL 4049832, at *8 (E.D.N.Y. Sept. 13, 2012) (dismissing claims where  "several offensive quips to [plaintiff] about his perceived disability" including that "[plaintiff] needed to see a psychiatrist" were "'[i]solated, minor acts or occasional episodes' . . . that did not warrant relief under a hostile environment theory"); *Legnani v. Alitalia Linee Aeree Italiane*, No. 95-0202, 1997 WL 642556, at *3 (S.D.N.Y. Oct. 16, 1997)(4 to 5 incidences of verbal harassment and physical gestures over a 2-month period were insufficient to create hostile work environment).

Finally, Plaintiff has not made the required factual allegations to show that American knew of these private moments and failed to stop them, such that liability for any co-worker harassment could be imputed the Company. *See Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2451 (2013) (employers can only be held liable for co-worker harassment where the Company behaved negligently with regard to any complaints); *Scoppettone v. Mamma Lombardi's Pizzico, Inc.*, 523 F. App'x 73, 75 (2d Cir. 2013) (employers will not be liable for co-worker harassment unless they either "provided no reasonable avenue for complaint or knew of the harassment but did nothing about it.").  To the contrary, Plaintiff admits that once she complained to American about the comments, Human

Resources conducted an "extensive" investigation and concluded that Plaintiff's complaints were unsubstantiated.  *See* A-71 at ¶¶ 34-36.  Of course, Plaintiff alleges that the Company should have investigated further.  *Id.*  But, other than her subjective opinion in this regard, Plaintiff alleges no facts to suggest that the investigation was actually improper or insufficient.  Instead, the Amended Complaint suggests only that Plaintiff disagrees with the investigation's outcome.  This is insufficient to impute liability to American.  *See Vance v. Ball State University*, 646 F.3d 461, 471-72 (7th Cir. 2011), *aff'd* 133 S.Ct. 2434 (2013) (holding that Ball State could not be liable where it had conducted a "calibrated" investigation into the plaintiff's complaints); *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 392 (7th Cir. 2010) ("An employer can generally avoid liability for a hostile work environment if it promptly investigated complaints made by the plaintiff and acted to stop the harassing behavior.").

In a last-ditch attempt to impute liability to American, Plaintiff alleges that airline Captain Rohdenburg – the pilot who once patted down Plaintiff to determine whether she was concealing a rat beneath her clothing – was her "direct supervisor."  *See* A-69 at ¶ 29.  But, the Amended Complaint contains no allegations to suggest that Captain Rohdenburg actually was Plaintiff's supervisor as that term is legally defined.  *See Fornah v. Cargo Airport Servs., LLC*, No. 12-3638, 2014 WL 25570, at *4 (E.D.N.Y. Jan. 2, 2014) (citing *Ball State Univ.*, 133

S. Ct. at 2443) (supervisors have the authority to "take tangible employment actions…").  And, perhaps more critically, even if Captain Rohdenburg had been Plaintiff's supervisor, a one-time decision to pat down an employee to determine whether that employee was transporting contraband would not rise to the level of a severe and pervasive hostile work environment.  *See Samuels v. New York State Dep't of Correctional Services*, No. 94-8645, 1997 WL 253209 (S.D.N.Y. May 14, 1997) (single incident of physical contact insufficient to support hostile work environment claim).  Accordingly, for these and all of the reasons set forth American's moving papers below, the Amended Complaint fails to state a claim for a hostile work environment on the basis of a perceived disability.

## VII.  CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court affirm the order of the District Court granting American's motion to dismiss.

Date:  August 11, 2014

Respectfully submitted,
AMERICAN AIRLINES, INC.

By:   /s/ *Michelle S. Silverman*
|One of Its Attorneys

Michelle S. Silverman
Ashley J. Hale
Morgan, Lewis & Bockius LLP
502 Carnegie Center
Princeton, New Jersey  08540
T.  609.919.6600
F.  609.919.6701

## <u>CERTIFICATE OF COMPLIANCE</u>

I, Michelle S. Silverman, an attorney, pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C)(i), certify that the foregoing Brief of Appellee complies with the type-volume limitations of Rule 32(a)(7)(B).  The Brief contains 6424 words, excluding the parts of the Brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), and was prepared using Microsoft Word 2007.

 /s/ Michelle S. Silverman_____
Michelle S. Silverman

## **CERTIFICATE OF SERVICE**

I, Michelle S. Silverman, an attorney, certify that on August 11, 2014, I served the foregoing Brief of Appellee American Airlines, Inc. by transmitting one electronic copy via the CM/ECF system, which will send notification of such filing, to:

**Attorneys for Plaintiff-Appellant**
Louann Giambattista
The Law Office of Steven A. Morelli, P.C.
1461 Franklin Avenue
Garden City, NY 11530

_/s/ Michelle S. Silverman_
Michelle S. Silverman